# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| BRIANNA WAGNER, on behalf of herself and all others similarly situated, | Case No.: |
| Plaintiff, | **DEFENDANT'S NOTICE OF REMOVAL** |
| v. | [Filed concurrently with Civil Cover Sheet and Certificate of Interested Persons and Corporate Disclosure Statements] |
| FLORIDA HEALTH SCIENCES CENTER, INC., doing business as TAMPA GENERAL HOSPITAL, | |
| Defendant. | Action Filed:        August 7, 2023
Complaint Served: August 10, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital ("Defendant" or "TGH"), hereby removes the action filed by Plaintiff Brianna Wagner ("Plaintiff"), on behalf of herself and all others similarly situated, in the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014367, to the United States District Court for the Middle District of Florida. In support of removal, TGH states as follows:

## JURISDICTION AND VENUE

1.        This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332.  Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

2.        This Court is in the judicial district and division embracing the place where the state court case was brought and is pending.  Thus, this Court is the proper district court to which this case should be removed.  28 U.S.C. §§ 1441(a), 1446(a).

## BACKGROUND AND TIMELINESS OF REMOVAL

3.        On August 7, 2023, Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint (the "Complaint") against TGH in Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Case No. 23-CA-014367 (the "State Court Action").  Plaintiff filed the Complaint as a putative class action.

4.        On August 10, 2023, Plaintiff served TGH with copies of the Summons and Complaint via process server.  Pursuant to 28 U.S.C. § 1446(a), true and correct copies of documents received in the State Court Action by TGH are attached hereto as exhibits.  Specifically, attached to this Notice of Removal are true and correct copies of (1) the operative Complaint (**Exhibit A**); (2) the docket in the

State Court Action (**Exhibit B**); and (3) service documents (i.e., summons and proof of service) filed in the State Court Action (**Exhibit C**).

5.       No other pleadings or substantive filings (i.e., answers, state court orders terminating or dismissing parties, responses, etc.) have been filed in the State Court Action.

6.       This removal is timely because TGH filed this removal within 30 days of being served with the Complaint. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (time period for removal begins when the defendant is served).

## CAFA JURISDICTION

7.       <u>Basis of Original Jurisdiction</u>.  This Court has original jurisdiction over this action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, and any member of the putative class is a citizen of a different state than the state of citizenship of the defendant.  28 U.S.C. § 1332(d)(1)-(2)(A); *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1149 (11th Cir. 2021).

8.       As set forth below, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), TGH may remove the State Court Action to federal court under CAFA because: (1) this action is pled as a class action; (2) the putative class includes more than one hundred (100) members; (3) "minimal diversity" exists, *i.e.*, at least one member of the putative class is a citizen of a state different from that of Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.  *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

## THE ACTION IS PLED AS A CLASS ACTION

9.       CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure ***or similar State statute*** or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B) (emphasis added); *Lowery*, 483 F.3d at 1199 n. 35.

10.       Plaintiff brings this action as a "class action" and seeks class certification pursuant to Florida Rule of Civil Procedure 1.220.  [Compl., ¶ 70.] Because Florida's class action rule, Florida Rule of Civil Procedure 1.220, "is not only 'similar' to, but is based on, Rule 23," *Coquina Crossing Homeowners Assoc., Inc. v. MHC Operating Ltd. P'ship*, Case No. 3:21-cv-84-MMH-LLL, 2022 WL 843582, at *7 (M.D. Fla. Mar. 22, 2022), the first CAFA element is satisfied.

## THE PUTATIVE CLASS INCLUDES AT LEAST ONE HUNDRED (100) MEMBERS

11.     Plaintiff alleges that, "on or around May 12, 2023," "TGH, a large hospital serving western Florida and the greater Tampa Bay region . . . learned a 'criminal group' gained unauthorized access to [its] patients' personally identifiable information ('PII' or 'Sensitive Information')" (the "Data Incident"). [Compl., ¶¶ 1 & 2; 23.] Plaintiff further alleges that, "[o]n information and belief, TGH failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Sensitive Information." [*Id.* at ¶ 35.]

12.     Based on these allegations, Plaintiff asserts six causes of action against TGH: (1) negligence, (2) invasion of privacy (electronic intrusion), (3) breach of implied contract; (4) unjust enrichment; (5) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 *et seq.*; and (6) breach of fiduciary duty. [*See generally,* Compl.]

13.     Furthermore, Plaintiff purports to bring these six causes of action on behalf of herself and a class defined as "All individuals in the United States whose Sensitive Information was accessed without authorization in the Data [Incident], including all those who received a notice of the Data [Incident]." [*Id.* at ¶ 70.]

14.     Plaintiff also alleges that approximately 1.2 million people were impacted in the Data Incident. [*Id.* at ¶ 74.]

15.     To date, TGH has mailed notification to approximately 1,314,425 people, the vast majority of whom reside in the United States.

16.     Based on the above, the number of putative class members exceeds the statutorily-required minimum of 100 individuals.

## MINIMAL DIVERSITY OF CITIZENSHIP EXISTS

17.     Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."  *See also Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-CV-1522-T-33TGW, 2020 WL 5758003, at *2 (M.D. Fla. Sept. 28, 2020) (stating that minimal diversity is met if "a single putative class member [i]s a citizen of a state other than [that of defendant] at the time of removal").

18.     Defendant's Citizenship.  Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *RVRoof.com, Inc. v. Ariz. RV Specialist, LLC*, Case No. 3:19-cv-674-J-34MCR, 2019 WL 2452824, at *2 (M.D. Fla. June 12, 2019) (quoting 28 U.S.C. § 1332(c)(1)). "A corporation's principal place of business is 'the place where the corporation's high level officers direct, control, and coordinate the corporation's activities,'" *i.e.*, the corporation's "nerve center." *Cohen v. Burlington*, No. 22-13222, 2023 WL 4364499, at *3 n. 2 (11th Cir. July 6, 2023) (quoting *Hertz Corp. v. Friend*, 559 U.S.

77, 80 (2010)); *see also Tavares v. Pelican Int'l, Inc.*, Case No. 3:22-cv-554-MMH-MCR, 2022 WL 1619172, at *2 (M.D. Fla. May 23, 2022).  "In practice, this normally is 'the place where the corporation maintains its headquarters[.]'" *Tavares*, 2022 WL 1619172, at *2 (quoting *Hertz*, 559 U.S. at 93); *see id.* ("A corporation's headquarters is normally . . . its principal place of business.").

19.     As alleged in the Complaint, TGH is a Florida corporation with its principal place of business in Tampa, Florida.  [Compl., ¶ 12 (stating that TGH is a "Florida corporation with its principal place of business at One Tampa General Circle, Tampa, FL 33601").]  Accordingly, pursuant to *Hertz*'s nerve center test, TGH has its principal place of business, *i.e.*, its headquarters, in Florida.  Specifically, and as alleged in the Complaint, TGH's headquarters are located at 1 Tampa General Circle, Tampa, Florida 33606.[1]  Further, TGH is organized under the laws of Florida.  Accordingly TGH is a citizen of Florida for purposes of CAFA.

20.     <u>Plaintiff's and the Putative Class's Citizenship</u>.  For diversity purposes, an individual is a "citizen" of the state in which he or she is domiciled.  *Arnold v. Leavy Bros. Moving & Storage, Inc.*, Case No. 3:22-cv-427-BJD-JBT, 2023 WL 2347488, at *1 (M.D. Fla. Mar. 3, 2023) (citing *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013)).  "A person's domicile is the place of 'his

---

[1] *See* Hospital Contact Information, https://www.tgh.org/about-tgh/contact-us (last visited August 13, 2023).

true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.'" *Smith*, 991 F.3d at 1149 (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257–58 (11th Cir. 2002)). Said differently, "domicile (or citizenship) consists of two elements: residency in a state and intent to remain in that state." *Id.* "Courts look to various factors in determining a person's intent to remain in a state, including: the location of real and personal property, business ownership, employment records, the location of bank accounts, payment of taxes, voter registration, vehicle registration, driver's license, membership in local organizations, and sworn statements of intent." *Id.*

21. Here, Plaintiff alleges that she is a natural person and citizen of Florida, residing in Tampa, Florida, where she intends to remain. [*See* Compl., ¶ 11.] Absent evidence to the contrary, Plaintiff is a citizen of the state of Florida for CAFA purposes. However, even assuming Plaintiff is a citizen for purposes of CAFA, the putative nationwide class she seeks to represent is much broader and more expansive geographically. For example, TGH sent notifications of the Data Incident to addresses of individuals in all 50 states and the District of Columbia. And, of course, while "residency does not equate to citizenship," *Smith*, 991 F.3d at 1149 ("Residency is necessary, but insufficient, to establish citizenship in a state.") (citing *Travaglio*, 735 F.3d at 1269), in this case, where only one putative class member must reside and intend to remain in a state other than Florida, it is more likely than

not that at least one of the approximately 1,314,425 putative class members to whom TGH mailed notification is a non-Florida citizen.

22.     Accordingly, as established above, "minimal diversity" of citizenship exists pursuant to CAFA because TGH is a citizen of the State of Florida, and it is more likely than not that at least one of the approximately 1,314,425 putative class members is a citizen of a state other than Florida.

23.     <u>No CAFA Exceptions Apply</u>.[2]  Plaintiff also cannot meet her burden to show, let alone demonstrate, that CAFA's "home state" or "local controversy exception" applies.  *See Alvarez v. Loancare LLC*, Case No. 20-21837-CIV-ALTONAGA/Goodman, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021) (citing *Hunter v. City of Montgomery*, 859 F.3d 1329, 1335 (11th Cir. 2017)).

24.     Under the "home state" exception to CAFA, "a district court must 'decline to exercise jurisdiction over class actions in which two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed.'"  *Day*, 2020 WL 5758003, at *5 (citation omitted).  Similarly, the "local controversy exception" requires a district court to "decline to exercise jurisdiction when three requirements are met: (1) greater than two-thirds of the proposed plaintiff class are

---

[2] TGH only briefly addresses the mandatory exceptions to CAFA jurisdiction and reserves all rights to raise additional or other arguments regarding any CAFA exception.

citizens of the state of filing; (2) at least one 'significant defendant' is a citizen of the state of filing; and (3) the principal injuries were incurred in the state of filing." *Smith*, 991 F.3d at 1155 (citing 28 U.S.C. § 1332(d)(4)(A)(i)).  "Both exceptions have a similar requirement that can only be satisfied if a defendant shares a state of citizenship with two-thirds of the proposed plaintiff classes, and the action was originally filed in that same state." *Alvarez*, 2021 WL 184547, at *6.  The "local controversy exception" also has the added requirement that states that the Court must decline to exercise jurisdiction if, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person." *Lowery*, 483 F.3d at 1200 n. 37 (quoting 28 U.S.C. § 1332(d)(4)(A)(ii)).

25.     First, the "local controversy" exception does not apply here because it is not true that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other person" in the prior 3 years from the date of filing of Plaintiff's Complaint.  To the contrary, multiple class actions stemming from the same Data Incident and asserting the same or similar causes of action and seeking to represent a nationwide class and Florida subclass were filed in the same state court before Plaintiff's Complaint, some of which have been removed to this District.  *See DiPierro, et al. v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 21, 2023 under Case No. 23-CA-

013984 (Fla. 13th Jud. Cir., Hillsborough Cty.); removed and now pending under Case No. 8:23-cv-1864-KKM-UAM (M.D. Fla.); *Ramirez v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 27, 2023 under Case No. 23-CA-014150 (Fla. 13th Jud. Cir., Hillsborough Cty.); removed & now pending under Case No. 8:23-cv-01890-SDM-TGW (M.D. Fla.); *Colon, et al. v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp.*, filed on July 21, 2023 under Case No. 23-CA-013991; removed and & now pending under Case No. 8:23-cv-01909-MSS-CPT (M.D. Fla.); *Doe 1, et al. v. Fla. Health Scis. Ctr., Inc. d/b/a Tampa Gen. Hosp., a Fla. Non-Profit Corp.*, Case No. 23-CA-014344 (Fla. 13th Jud. Cir., Hillsborough Cty.). Further, a total of thirteen other class actions (including the prior actions mentioned above) have been filed stemming from the Data Incident, eleven of which are still pending, which suggests that the "local controversy" exception is inapplicable under the circumstances. *See Hunter v. City of Montgomery*, Civil Action No. 2:15-653-BJR, 2016 WL 9444333, at *2 (M.D. Ala. Aug. 11, 2016) (stating that the requirement asking "whether a sufficiently similar case has been filed within the three years immediately preceding this case . . . is meant as a test for whether a controversy is truly localized," and further stating that "if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that th[e local controversy] exception is intended to address") (citation omitted).

11

26.     Second, neither CAFA exception applies, because with notification letters sent to individuals with addresses in all 50 states, there simply is no way to know who a citizen of any state is without speaking directly to each of the 1,314,425 notified individuals.  *See Smith*, 991 F.3d at 1157 (holding that, to prove "citizenship" for the purpose of the local controversy exception, the plaintiff "must provide evidence of the class members' state of residence as well as evidence showing their intent to remain in that state" and that "[m]ere mental fixing of citizenship is not sufficient.  What is in another man's mind must be determined by what he does as well as by what he says").  This is especially true here, where "citizens of other states may live part of the year in Florida . . . , but maintain a permanent residence elsewhere."  *Id.* at 1158.  Further exacerbating this problem here is the nature of the putative class, many of whom may have visited TGH only for a one-off hospital visit while visiting or temporarily residing in Florida.

27.     In short, because at least one putative class member is likely a citizen of a state other than Florida, "minimal diversity" is established pursuant to CAFA, and no evidence exists to suggest any of the exceptions to CAFA apply.

## THE AMOUNT IN CONTROVERSY EXCEEDS THE CAFA THRESHOLD[3]

28.     Where a complaint does not specify the amount of damages sought, as is the case with Plaintiff's Complaint, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied.  28 U.S.C.A. § 1446(c)(2)(B); *Penton v. Centennial Bank*, Case No. 4:18-cv-450-AW-MAF, 2021 WL 8014675, at *3 (N.D. Fla. July 30, 2021) (citing *Fed. Mut. Ins. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)).   The United States Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount-in-controversy requirement.   *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 90 (2014).   "The goal is to determine 'what the controversy is in the case, not how much plaintiffs are ultimately likely to recover as a result of the lawsuit.'"   *Penton*, 2021 WL 8014675, at *3 (quoting *Fox v. Ritz-Carlton Hotel Co., L.L.C.*, 977 F.3d 1039, 1045 (11th Cir. 2020)).   "Accordingly, dismissal is appropriate only if it 'appears to a legal certainty that the claim is really for less than the jurisdictional amount.'"   *Id.* (quoting *McKinnon Motors, LLC*, 329 F.3d at 807).   Furthermore, in determining the amount

---

[3] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $5,000,000 threshold and are not intended and cannot be construed as an admission that Plaintiff can state a claim or is entitled to damages in any amount. Defendant denies liability, denies Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

in controversy, the claims of all putative class members are aggregated to determine if the amount in controversy is more than $5,000,000, *Topalli v. PetSmart, LLC*, Case No.: 6:22-cv-1670-WWB-EJK, 2023 WL 2928301, at *1 (M.D. Fla. Apr. 13, 2023) (citation omitted), including "'class members' . . . (named or unnamed) who fall within the definition of the *proposed* or certified class,'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citation omitted).

29.     Here, Plaintiff seeks damages, including, but not limited to, compensatory, exemplary, punitive, and statutory damages as allowed by law; restitution damages; attorneys' fees and costs; prejudgment and post-judgment interests; and declaratory and injunctive relief. [Compl., Prayer for Relief.]

30.     As demonstrated below, the allegations in the Complaint make it more likely than not that the amount in controversy under CAFA exceeds $5,000,000.

31.     Negligence Claim. As stated above, Plaintiff states a claim for negligence. [Compl., ¶¶ 80–88.] Specifically, Plaintiff alleges that TGH "owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information and keeping it from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties." [*Id.* at ¶ 81.] Plaintiff further claims that a "TGH was under a basic duty to act with reasonable care when

14

it undertook to collect, create, and store Plaintiff's and Class's Sensitive Information on its computer system[.]"  [*Id.* at ¶ 82.]

32.    Plaintiff claims that TGH breached these and other duties, and therefore was negligent, "by failing to adopt, implement, and maintain adequate security measures to safeguard th[eir] information . . ."  [*Id.* at ¶ 85.]

33.    Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages she or any of the putative class members allegedly sustained as a consequence of TGH's negligence.  However, because Plaintiff seeks recovery for damages for the "lifelong harm that victims will face following the Data [Incident]" and further alleges that "the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially higher than it was before the [Data Incident]" [*id.* at ¶¶ 32 & 33; *see also id.* at ¶¶ 67–69 (stating that "Plaintiff's and the Class Members' Sensitive Information may exist on the Dark Web and in the public domain for years beyond the expiration of the . . . protection [TGH originally offered to putative class members]" and therefore the original credit monitoring offered by TGH was "inadequate")], one option for assigning a value to these damages is through the cost of credit monitoring.

34.    Three main identity-protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit-monitoring services ranging from $14.99 to $19.95 per person per month.  For example, LifeLock offers a product,

called Norton360 with LifeLock Advantage, which provides 1-Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $15.99 per month if paid annually.[4]  Similarly, both Equifax[5] and Experian[6] offer products that provide 3-Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 and $24.99 per month, respectively.  Multiplying just the cost of providing <u>one month</u> of credit-monitoring services at $15.99 (the cheapest of the three products) by the number of putative class members, the amount in controversy for just credit monitoring is approximately $32,017,655.80 (calculated as: 1,314,425 individuals, times 1 month, times $15.99 per month).

35.     Accordingly, Plaintiff's and the putative class members' potential credit monitoring damages alone far exceed the $5,000,000 CAFA amount-in-

---

[4] *See* https://www.lifelock.com/family-plans/?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:ggl:en:e:br:ll&utm_source=google&utm_medium=cpc&utm_campaign=1584904959&adgroup=66661422904&utm_term=lifelock%2520credit%2520monitoring&targetid=kwd-295997165667&matchtype=e&utm_content=297610135624&network=g&device=c&adp=&testgroup=&pgrid=66661422904&ptaid=kwd-295997165667&gclid=EAIaIQobChMI0v-3-eG28wIVEFpgCh2XSQzTEAAYASABEgLMPPD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[5] *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355994880&DS3_KIDS=p50281164756&campaignid=71700000061086345&sakwid=43700050281164756&gclid=EAIaIQobChMIzpzAneG28wIVS9KzCh3vCA_MEAAYASAAEgIjevD_BwE&gclsrc=aw.ds (last visited on August 15, 2023).

[6]*See* https://www.experian.com/protection/compare-identity-theft-products/ (last visited on August 15, 2023).

controversy jurisdictional amount.   Combined with Plaintiff's other alleged negligence damages, the total amount in controversy is well in excess of $5,000,000.

36.      Breach of Fiduciary Duty Claim.   Plaintiff also claims that "a relationship existed between Plaintiff and members of the Class and TGH in which Plaintiff and members of the Class put their trust in TGH to protect the private information of Plaintiff and members of the Class and TGH accepted that trust," thereby creating a fiduciary relationship and duty on the part of TGH.  [Compl., ¶¶ 139–44.] Plaintiff further claims TGH breached that fiduciary duty "by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and members of the Class."  [*Id.* at ¶ 141.]  As a result of TGH's alleged breach of fiduciary duty, Plaintiff alleges she and the class suffered damages, and are entitled to "actual, consequential, and nominal damages, and injunctive relief."  [*Id.* at ¶ 144.]

37.      Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Defendant's alleged breach of fiduciary duty.  Therefore, Defendant does not include any specific "breach of fiduciary duty" damages in the calculation of the total amount in controversy.  But, as stated above, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $32,017,655.80.  Therefore, when these additional

17

alleged damages are combined with the cost of just one month of credit monitoring for the entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

38.     Breach of Implied Contract Claim.  Plaintiff also asserts that TGH breached an implied contract with Plaintiff and putative class members.  [*See* Compl., ¶¶ 103–15.]

39.     Specifically, Plaintiff claims that "Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect [their Sensitive Information] and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised."  [*Id.* at ¶¶ 104–05.]

40.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which Plaintiff or any of member of the Class are allegedly entitled for Defendant's alleged breach of implied contract. Therefore, TGH does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy.  But, again, just one month of Norton360 with LifeLock Advantage for each member of the proposed class would amount to, at a minimum, $32,017,655.80.  Therefore, when these additional alleged damages are combined with the cost of just one month of credit monitoring for the

entire class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

41.     Claim for Violation of the Florida Deceptive and Unfair Trade Practice Act.  Plaintiff claims that TGH violated the FDUTPA, Fla. Stat. § 501.201 *et seq*.  [Compl., ¶¶ 128–38.]

42.     Specifically, Plaintiff alleges that TGH violated the FDUTPA "by engaging in . . . unfair and deceptive practices," including by "fail[ing] to maintain adequate and reasonable data and cybersecurity protocols for Plaintiff's and Class Members' Sensitive Information" and "fail[ing] to destroy or dispose of Sensitive Information and timely notify its patients of the Data [Incident] in violation of Florida law." [*Id.* at ¶ 134.]  As a result of TGH's alleged violation of the FDUTPA, Plaintiff asserts that she and the class have been injured, [*see id.* at ¶¶ 135–36], alleging damages in the form of actual damages, and attorneys' fees and costs, [*id.* at ¶ 138].

43.     Plaintiff's Complaint again contains no allegations that would support or suggest the amount in "damages" she or any member of the Class allegedly sustained as a result of Defendant's alleged violation of the FDUTPA. Therefore, Defendant does not include in the calculation of the total amount in controversy any alleged violation-of-FDUTPA damages.  However, the FDUTPA allows private parties to recover "actual damages, attorney's fees, and court costs,"

*N. Am. Clearing, Inc. v. Brokerage Comput. Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing Fla. Stat. § 501.211(2)), all relief which Plaintiff seeks. Accordingly, when these damages—permitted and recoverable under law—are combined with the cost of just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the putative class, in addition to the other damages Plaintiff claims she and the Class have suffered, the amount in controversy further exceeds CAFA's $5,000,000 threshold. *See, e.g.*, *Shaver v. Ford Motor Co.*, 768 F. Supp. 2d 1235, 1237 (S.D. Fla. 2011) (CAFA amount-in-controversy requirement met and evident on face of plaintiff's complaint when plaintiff asserted FDUTPA claim involving "at least hundreds of thousands of persons").

44.    <u>Total Amount in Controversy</u>.  Based on the discussion above, the amount in controversy based on just one month of Norton360 with LifeLock Advantage credit monitoring for each member of the Class exceeds the $5,000,000 CAFA threshold.  Accordingly, the CAFA amount-in-controversy threshold is satisfied before ever taking into account other forms of damages, including compensatory damages, injunctive or declaratory relief, or attorneys' fees, which, as discussed below, add even more to the total amount in controversy.

45.    <u>Prayer for Other Monetary and Injunctive Relief and Other Claims</u>. In addition to the claims and damages discussed above, Plaintiff also states claims for unjust enrichment, [Compl., ¶¶ 116–27] and invasion of privacy (electronic

intrusion), [*id.* at ¶¶ 89–102] and demands injunctive relief requiring TGH to implement and maintain reasonable security measures, including, but not limited to, "[e]njoining [TGH] from further deceptive practices and making untrue statements about the Data [Incident] and the stolen Sensitive Information," [*id.* at Prayer for Relief].

46.     In certain circumstances, where the value of declaratory or injunctive relief is not too speculative, the value can be considered when determining the amount in controversy. *See Mann v. Unum Life Ins. Co. of Am.*, 505 F. App'x 854, 856 (11th Cir. 2013). The value of declaratory or injunctive relief is based upon the "value of the object of the litigation." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted). Courts in the Eleventh Circuit consider the "value of the object of the litigation" from the plaintiff's perspective, *i.e.*, "the monetary value of the benefit that would flow to the plaintiffs if the relief [they were seeking] were granted." *Id.* at 1316 (citation omitted). And under CAFA, courts "aggregate the claims of the individual class members and consider the monetary value that would flow to the entire class if the declaratory [or injunctive] relief were granted." *Id.*

47.     Here, however, no allegations in the Complaint allow Defendant to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, TGH has not included that value in the calculation of the total amount in controversy.

Nevertheless, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## ATTORNEYS' FEES

48.     When underlying substantive law provides for an award of attorneys' fees, a party may include a "reasonable amount" in its calculation in the amount in controversy. *McLawhorn v. GEICO Indem. Co.*, Case No. 8:17–cv–156–T–33AEP, 2017 WL 1277744, at *5 (M.D. Fla. Apr. 6, 2017) (citing *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000)).   Here, Plaintiff's FDUTPA claim provides for the award of attorneys' fees to the prevailing party, and such fees are available under FDUTPA in calculating the amount in controversy. *See Reilly v. Amy's Kitchen, Inc.*, 2 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014) ("[T]he Court may consider attorney's fees and costs available under FDUTPA in calculating the amount in controversy[.]") (citing *McKinnon Motors, LLC*, 329 F.3d at 808 n. 5).

49.     Although only "attorneys' fees incurred up to the time of removal may be included in the amount in controversy" calculation, *McLawhorn*, 2017 WL 1277744, at *5, TGH underscores these allegations to the Court as further evidence that the amount in controversy exceeds $5,000,000, as already established above.

## NOTICE

50.     As required by 28 U.S.C. § 1446(d), TGH is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice

22

of Removal with the Clerk of the Circuit Court for the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.

WHEREFORE, Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital removes the State Court Action from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida to U.S. District Court for the Middle District of Florida.

Respectfully submitted,

DATED: August 30, 2023

**BAKER & HOSTETLER LLP**

By: */s/ Julie Singer Brady*

Julie Singer Brady
Florida Bar No. 389315
Email:   *jsingerbrady@bakerlaw.com*
200 South Orange Avenue, Suite 2300
Orlando, FL 32801
Telephone: 407.649.4000
Facsimile: 407.841.0168

Casie D. Collignon (*pro hac vice forthcoming*)
Sarah A. Ballard (*pro hac vice forthcoming*)
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303.861.0600
Facsimile: 303.861.7805

*Attorneys for Defendant Florida Health Sciences Center, Inc. d/b/a Tampa General Hospital*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **DEFENDANT'S NOTICE OF REMOVAL** was filed and served through the Court's ECF system on this 30th day of August, 2023, on all counsel of record.


*/s/ Julie Singer Brady*
Julie Singer Brady