EXHIBIT A

**IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA**

| | |
|---|---|
| BRIANNA WAGNER, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>FLORIDA HEALTH SCIENCES CENTER, INC., doing business as TAMPA GENERAL HOSPITAL,<br><br>                    Defendant. | Case No.:<br><br><br>CLASS REPRESENTATION<br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff, Brianna Wagner, on behalf of herself and all others similarly situated, states as follows for her class action complaint against Defendant, Florida Health Sciences Center, Inc., doing business as Tampa General Hospital ("TGH" or "Defendant"):

**INTRODUCTION**

1.      In May 2023, TGH, a large hospital serving western Florida and the greater Tampa Bay region, lost control over its computer network and the highly private Sensitive Information stored on the computer network in a data breach perpetrated by cybercriminals ("Data Breach").

2.      On information and belief, the Data Breach began on or around May 12, 2023. Following an internal investigation, Defendant learned a "criminal group" gained unauthorized access to patients' personally identifiable information ("PII" or "Sensitive Information").[1]

3.      On information and belief, cybercriminals bypassed Defendant's inadequate security systems to access current and former patients' Sensitive Information in its computer systems.

---

[1] *Cybersecurity Notice*, https://www.tgh.org/cybersecurity-notice (last visited Aug. 7, 2023).

4.      On or about July 28, 2023, TGH finally notified individuals whose Sensitive Information was accessed about the widespread Data Breach ("Breach Notice"), an example which is attached as **Exhibit A**. TGH inexplicably waited two months before informing Plaintiff and Class Members even though they had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

5.      Defendant's failure to timely detect and report the Data Breach made its patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Sensitive Information.

6.      Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

7.      In failing to adequately protect patients' information, adequately notify them about the breach, and obfuscating the nature of the breach, Defendant violated state law and harmed its current and former patients.

8.      Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendant with their Sensitive Information. But Defendant betrayed that trust. Defendant failed to properly use up-to-date security practices to prevent the Data Breach.

9.      Plaintiff Brianna Wagner is a Data Breach victim.

10.     Accordingly, Plaintiff, on her own behalf and on behalf of a class of similarly situated individuals, brings this lawsuit seeking injunctive relief, damages, and restitution, together

with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendant's possession.

## PARTIES

11.     Plaintiff, Brianna Wagner, is a natural person and citizen of Florida, residing in Tampa, Florida, where she intends to remain. Ms. Wagner is a Data Breach victim, receiving TGH's Breach Notice dated July 28, 2023.

12.     Defendant, Florida Health Sciences, Inc., doing business as Tampa General Hospital, is a Florida corporation with its principal place of business at One Tampa General Circle, Tampa, FL 33601. Defendant may be served with process through its registered agent, Nicole Justice, One Davis Blvd., Ste. 401, Tampa, FL 33606.

## JURISDICTION & VENUE

13.     The Court has subject matter jurisdiction over Plaintiff's claims under Florida Stat. § 26.012 and § 86.011. This Court has jurisdiction over this dispute because this complaint seeks damages in excess of $30,000.00, exclusive of interest and attorneys' fees.

14.     Venue is proper in Hillsborough County pursuant to Florida Stat. § 47.011 and § 47.051 because Defendant is headquartered and does business in this county, Plaintiff resides and suffered injury in this county, and Defendant has an office for the transaction of its customary business in this county.

15.     The Court has personal jurisdiction over Defendant because under Florida Stat. § 48.193, because TGH personally or through their agents operated, conducted, engaged in, or carried on a business or business venture in Florida and had offices in Florida committed tortious acts in Florida, and because Defendant engaged in significant business activity within Florida.

## BACKGROUND FACTS

*Tampa General Hospital*

16.     TGH is one of the largest hospitals in Florida, with 1,040 beds and more than 8,000 employees.[2] TGH's last reported total annual revenue, as of 2021, was $1.84 billion.[3] TGH operates a hospital and numerous satellite medical facilities with doctors of various specialties providing a range of medical services to patients.

17.     As part of its business, TGH receives and maintains the Sensitive Information of current and former patients. In doing so, Defendant implicitly promises to safeguard their Sensitive Information.

18.     In collecting and maintaining their current and former patients' Sensitive Information, Defendant agreed that it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Sensitive Information

19.     Despite recognizing its duty to do so, on information and belief, TGH has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Sensitive Information or trained its IT or data security employees to adequately prevent, detect, and stop breaches of its systems. As a result, TGH leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to patients' Sensitive Information.

*TGH Fails to Safeguard Patients' Sensitive Information*

20.     Plaintiff has been a patient of TGH since 2019. As a condition of receiving TGH's services, Plaintiff provided TGH with her Sensitive Information, including but not limited to her

---

[2] *About Tampa General Hospital*, https://www.tgh.org/about-tgh (last visited Aug. 7, 2023).
[3]     *2021   Annual   Report*,   Tampa   General   Hospital,   p.   117,   accessible   at https://78ca0751.flowpaper.com/TGH2021AnnualReportfinalflipbook/#page=1 (last visited Aug. 7, 2023).

name, Social Security number, date of birth, address, phone number, health insurance information, and medical information. Defendant used that Sensitive Information to facilitate services to Plaintiff and required Plaintiff to provide that Sensitive Information to obtain services.

21.    On information and belief, TGH collects and maintains patients' Sensitive Information in its computer systems.

22.    In collecting and maintaining the Sensitive Information, TGH implicitly agrees it will safeguard the data using reasonable means according to state and federal law.

23.    According to the Breach Notice, TGH claims to have "detected unusual activity on [its] computer systems" on May 31, 2023. Following an internal investigation, Defendant "determined that an unauthorized third party accessed [its] network and obtained certain files from [its] systems between May 12 and May 30, 2023." Ex. A.

24.    According to the breach posted to its website, TGH notified the FBI of the Data Breach, and TGH there described the party that accessed its internal system as a "criminal group."

25.    In other words, Defendant's investigation revealed that its network had been hacked by cybercriminals and that Defendant's inadequate cyber and data security systems and measures allowed those responsible for the cyberattack to obtain files containing a treasure trove of TGH's patients' personal and highly private Sensitive Information.

26.    Additionally, Defendant admitted that Sensitive Information was actually stolen, stating that "the unauthorized third party accessed TGH's network and **obtained** certain files from its system," noting elsewhere that the files involved patient information including "names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment

information used by TGH for its business operations."[4]

27.     In the Breach Notice provided Plaintiff, TGH confirmed that it had reviewed its files and determined that "some of [Plaintiff's] information was contained within" the stolen files, "which may have included one or more of the following: your name, address, phone number, date of birth, Social Security number, health insurance information, medical record number, patient account number, date(s) of service and/or information related to treatment received at TGH used by us for our business operations." Ex. A.

28.     On or around July 28, 2023, nearly three months after the Breach occurred, Defendant finally began notifying Plaintiff and Class Members about the Data Breach.

29.     Despite its duties to safeguard Sensitive Information, TGH does not follow industry standard practices in securing patients' Sensitive Information, as evidenced by the Data Breach.

30.     In response to the Data Breach, TGH contends that it is "continually updating and hardening [its] systems to protect the data [it] maintain[s], and [it has] implemented additional defensive tools and increased monitoring to help prevent events such as this from occurring in the future." Ex. A. Although TGH fails to expand on what these alleged "defensive tools" and "increased monitoring" consist of, such steps and enhancements should have been in place before the Data Breach.

31.     Through its Breach Notice, TGH also recognized the actual imminent harm and injury that flowed from the Data Breach, so it encouraged breach victims to "review the statements [Data Breach victims] receive from [their] health insurer" for fraudulent transactions. Ex. A.

32.     TGH also offered one year of credit monitoring to Data Breach victims given the heightened risk of identity fraud and information misuse. This offer does not adequately address

---

[4] *Cybersecurity Notice*, https://www.tgh.org/cybersecurity-notice (last visited Aug. 7, 2023).

the lifelong harm that victims will face following the Data Breach.

33.     Even with one year of credit monitoring, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' Sensitive Information is still substantially higher than it was before the breach. The fraudulent activity resulting from the Data Breach may not come to light for years.

34.     Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Sensitive Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

35.     On information and belief, TGH failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Sensitive Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Sensitive Information.

***Plaintiff's Experience and Injuries***

36.     Plaintiff has been a patient of TGH since 2019, having used its services multiple times since then. As a condition of receiving TGH's services, Plaintiff provided Defendant with her Sensitive Information, including but not limited to her name, Social Security number, date of birth, address, phone number, and medical condition. Defendant used that Sensitive Information to facilitate its services to Plaintiff and required Plaintiff to provide that Sensitive Information to obtain Defendant's medical services.

37.     Plaintiff provided her Sensitive Information to Defendant and trusted that it would

use reasonable measures to protect it according to state and federal law.

38.    Plaintiff reasonably believed that a portion of the funds paid to Defendant for its medical services would be used to provide adequate data security for her Sensitive Information.

39.    TGH deprived Ms. Wagner of the earliest opportunity to guard herself against the Data Breach's effects by failing to notify her about it for months.

40.    As a result of the Data Breach and to mitigate the severe damages caused by the disclosure of her Sensitive Information to a "criminal group," Ms. Wagner has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred, signing up for credit monitoring, and freezing her credit. This time has been lost forever and cannot be recaptured.

41.    Ms. Wagner has and will spend considerable time and effort monitoring her accounts to protect herself from identity theft. Ms. Wagner fears for her personal financial security and uncertainty over what Sensitive Information was exposed in the Data Breach. Ms. Wagner has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

42.    Plaintiff suffered actual injury from the exposure of his Sensitive Information — which violates her rights to privacy.

43.    Ms. Wagner has suffered actual injury in the form of damages to and diminution in the value of her Sensitive Information—a form of intangible property that Plaintiff entrusted to Defendant, which was compromised as a result of the Data Breach.

44.    Ms. Wagner has suffered imminent and impending injury arising from the

8

substantially increased risk of fraud, identity theft, and misuse resulting from her Sensitive Information being placed in the hands of unauthorized third parties described by Defendant as a "criminal group."

45.     Ms. Wagner has a continuing interest in ensuring that her Sensitive Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

46.     Plaintiff and members of the proposed Class have suffered injury from the misuse of their Sensitive Information that can be directly traced to Defendant.

47.     The ramifications of Defendant's failure to keep Plaintiff's and the Class's Sensitive Information secure are severe. Identity theft occurs when someone uses another's personal information such as that person's name, date of birth, Social Security number, or driver's license number, without permission, to commit fraud or other crimes.

48.     The type of Sensitive Information compromised and potentially stolen in the Data Breach is highly valuable to identity thieves. The patients' stolen Sensitive Information can be used to gain access to a variety of existing accounts and websites to drain assets, bank accounts or open phony credit cards.

49.     Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

50.     Identity thieves can also use the stolen data to harm Plaintiff and Class members through embarrassment, blackmail, or harassment in person or online, or to commit other types of

fraud including obtaining ID cards or driver's licenses, fraudulently obtaining tax returns and refunds, and obtaining government benefits. A Presidential Report on identity theft from 2008 states that:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, . . . individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health- related or criminal record fraud, face other types of harm and frustration.
>
> In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

51.    As a result of Defendant's failure to prevent the Data Breach, Plaintiff and the proposed Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.   The loss of the opportunity to control how their Sensitive Information is used;

b.   The diminution in value of the Sensitive Information;

c.   The compromise and continuing publication of their Sensitive Information;

d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future

10

consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen Sensitive Information; and

h.   The continued risk to their Sensitive Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the Sensitive Information in their possession.

52.    Stolen Sensitive Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

53.    The value of Plaintiff's and the proposed Class's Sensitive Information on the black market is considerable. Stolen Sensitive Information trades on the black market for years, and criminals frequently post stolen Sensitive Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

54.    It can take victims years to spot identity or PII and PHI theft, giving criminals plenty of time to use that information for cash.

55.    One such example of criminals using Sensitive Information for profit is the development of "Fullz" packages.

56.    Cyber-criminals can cross-reference two sources of Sensitive Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers

are known as "Fullz" packages.

57.     The development of "Fullz" packages means that stolen Sensitive Information from the Data Breach can easily be used to link and identify it to Plaintiff and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Sensitive Information stolen by the "criminal group" in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other members of the proposed Class's stolen Sensitive Information is being misused, and that such misuse is fairly traceable to the Data Breach.

58.     Defendant disclosed the Sensitive Information of Plaintiff and the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the Sensitive Information of Plaintiff and the Class to people engaged in disruptive and unlawful practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Sensitive Information.

59.     Defendant's use of outdated and insecure computer systems and software that are easy to hack, and its failure to maintain adequate security measures and an up-to-date technology security strategy, as evidenced by its complete failure to prevent unauthorized access to its systems, demonstrates a willful and conscious disregard for privacy, and has exposed the Sensitive Information of Plaintiff and members of the proposed Class to unscrupulous operators, con-artists, and criminals.

12

60.    Defendant's failure to promptly notify Plaintiff and members of the proposed Class of the Data Breach exacerbated Plaintiff's and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Sensitive Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

61.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Sensitive Information.

62.    In 2016, the FTC updated its publication, Protecting Sensitive Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business.  The guidelines explain that businesses should:

a.    protect the sensitive consumer information that they keep;

b.    properly dispose of Sensitive Information that is no longer needed;

c.    encrypt information stored on computer networks;

d.    understand their network's vulnerabilities; and

e.    implement policies to correct security problems.

63.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

64.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security

measures.

65.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer, or in this case, patient data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

66.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Sensitive Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant's Offer of Credit Monitoring is Inadequate***

67.     At present, TGH has offered a mere one year of credit monitoring to breach victims.

68.     As previously alleged, Plaintiff's and the Class Members' Sensitive Information may exist on the Dark Web and in the public domain for years beyond the expiration of the offered protection, before it is used illicitly. With only twelve months of monitoring, Plaintiff and Class Members remain unprotected from the real and long-term threats against their personal, sensitive, and private data.

69.     Therefore, the "monitoring" services offered by TGH are inadequate, and Plaintiff and Class Members have a real and cognizable interest in obtaining equitable relief, in addition to the monetary relief requested herein.

## CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this suit on behalf of herself and a class of similarly situated

individuals under Florida Rule of Civil Procedure 1.220 on behalf of a class preliminarily defined as:

**All individuals in the United States whose Sensitive Information was accessed without authorization in the Data Breach, including all those who received a notice of the Data Breach.**

71.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

72.     Plaintiff reserves the right to amend the class definition.

73.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements for suing as representative parties:

74.     **Numerosity**. Plaintiff is representative of the proposed Class, consisting of approximately 1.2 million breach victims, far too many to join in a single action;

75.     **Ascertainability**. Class members are readily identifiable from information in Defendant's possession, custody, and control;

76.     **Typicality.** Plaintiff's claims are typical of Class member's claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

77.     **Adequacy.** Plaintiff will fairly and adequately protect the proposed Class's interests. Their interests do not conflict with Class members' interests, and Plaintiff has retained counsel experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf, including as lead counsel.

78.     **Commonality.** Plaintiff's and the Class's claims raise predominantly common fact and legal questions that a class wide proceeding can answer for all Class members. Indeed, it will

be necessary to answer the following questions:

    a.   Whether Defendant had a duty to use reasonable care in safeguarding Plaintiff's and the Class's Sensitive Information;

    b.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.   Whether Defendant was negligent in maintaining, protecting, and securing Sensitive Information;

    d.   Whether Defendant breached contract promises to safeguard Plaintiff and the Class's Sensitive Information;

    e.   Whether Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.   Whether Defendant's Breach Notice was reasonable;

    g.   Whether the Data Breach caused Plaintiff's and the Class' injuries;

    h.   What the proper damages measure is; and

    i.   Whether Plaintiff and the Class are entitled to damages, treble damages, or injunctive relief.

79.    Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method to fairly and efficiently adjudicate the controversy. The damages available to individual plaintiffs is insufficient to make individual lawsuits economically feasible.

**COUNT I**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

81.     Plaintiff and members of the Class entrusted their Sensitive Information to TGH. Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information and keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. This duty included, among other things, designing, maintaining, and testing Defendant's security systems to ensure the Sensitive Information of Plaintiff and the Class was adequately secured and protected, including using encryption technologies. Defendant further had a duty to implement processes that would detect a breach of its security system in a timely manner.

82.     TGH was under a basic duty to act with reasonable care when it undertook to collect, create, and store Plaintiff's and the Class's Sensitive Information on its computer system, fully aware–as any reasonable entity of its size would be–of the prevalence of data breaches and the resulting harm such a breach would cause. The recognition of Defendant's duty to act reasonably in this context is consistent with, *inter alia*, the Restatement (Second) of Torts § 302B (1965), which recounts a basic principle: an act or omission may be negligent if the actor realizes or should realize it involves an unreasonable risk of harm to another, even if the harm occurs through the criminal acts of a third party.

83.     Defendant knew that the Sensitive Information of Plaintiff and the Class was information that is valuable to identity thieves and other criminals. Defendant also knew of the serious harms that could happen if the Sensitive Information of Plaintiff and the Class was

wrongfully disclosed.

84.     By being entrusted by Plaintiff and the Class to safeguard their Sensitive Information, Defendant had a special relationship with Plaintiff and the Class. Plaintiff's and the Class's Sensitive Information was provided to TGH with the understanding that Defendant would take appropriate measures to protect it and would inform Plaintiff and the Class of any security concerns that might call for action by Plaintiff and the Class.

85.     Defendant breached its duty to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Sensitive Information by failing to adopt, implement, and maintain adequate security measures to safeguard that information, despite failures and intrusions, and allowing unauthorized access to Plaintiff's and the Class's Sensitive Information.

86.     But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their Sensitive Information would not have been compromised, stolen, and viewed by unauthorized persons. Defendant's negligence was a direct and legal cause of the theft of the Sensitive Information of Plaintiff and the Class and all resulting damages.

87.     The injury and harm suffered by Plaintiff and the Class members was the reasonably foreseeable result of Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the Class members' Sensitive Information.

88.     As a result of Defendant's failure, the Sensitive Information of Plaintiff and the Class were compromised, placing them at a greater risk of identity theft and subjecting them to identity theft, and their Sensitive Information was disclosed to third parties without their consent. Plaintiff and Class members also suffered diminution in value of their Sensitive Information in that it is now easily available to hackers on the Dark Web. Plaintiff and the Class have also suffered consequential out of pocket losses for procuring credit freeze or protection services, identity theft

18

monitoring, and other expenses relating to identity theft losses or protective measures.

## COUNT II
### Invasion of Privacy (Electronic Intrusion)
### (On Behalf of Plaintiff and the Class)

89.     Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

90.     Plaintiff and Class Members had a legitimate expectation of privacy regarding their Sensitive Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

91.     Defendant owed a duty to Plaintiff and Class Member to keep their Sensitive Information confidential.

92.     The unauthorized disclosure and/or acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' Sensitive Information is highly offensive to a reasonable person.

93.     Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Sensitive Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

94.     Defendant's failure to protect Plaintiff's and Class Members' Sensitive Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

95.     Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

96.     Because Defendant failed to properly safeguard Plaintiff's and Class Members' Sensitive Information, Defendant had notice and knew that its inadequate cybersecurity practices

would cause injury to Plaintiff and the Class.

97.    As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

98.    As a proximate result of Defendant's acts and omissions, the Sensitive Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

99.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Sensitive Information is still maintained by Defendant with their inadequate cybersecurity system and policies.

100.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Sensitive Information of Plaintiff and the Class.

101.    Plaintiff, on behalf of himself and Class Members, seek injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Sensitive Information.

102.    Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

103.    Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

104.    Plaintiff and the Class delivered their Sensitive Information to Defendant as part of the process of obtaining treatment and services provided by TGH.

105.    Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

106.    In providing their Sensitive Information, Plaintiff and Class Members entered into an implied contract with Defendant TGH whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' Sensitive Information.

107.    In delivering their Sensitive Information to Defendant TGH, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

108.    Plaintiff and the Class Members would not have entrusted their Sensitive Information to Defendant TGH in the absence of such an implied contract.

109.    Defendant TGH accepted possession of Plaintiff's and Class Members' Sensitive Information.

110.    Had Defendant TGH disclosed to Plaintiff and Class Members that it did not have

adequate computer systems and security practices to secure patients' Sensitive Information, Plaintiff and members of the Class would not have provided their Sensitive Information to Defendant.

111.   Defendant TGH recognized that consumer's Sensitive Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

112.   Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant TGH.

113.   Defendant TGH breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

114.   Defendant TGH breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their Sensitive Information.

115.   As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' Sensitive Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Sensitive Information; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their

Sensitive Information; and (h) the continued and substantial risk to Plaintiff's and Class Members'
Sensitive Information, which remains in the Defendant's possession with inadequate measures to
protect Plaintiff's and Class Members' Sensitive Information.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

116.    Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth
herein.

117.    This claim is pleaded in the alternative to the breach of contract claim.

118.    Plaintiff and Class Members conferred a monetary benefit on Defendant when
Defendant's clients provided Plaintiff's and Class Members' Sensitive Information to Defendant,
which Defendant collected.

119.    Defendant enriched itself by saving the costs it reasonably should have expended
on data security measures to secure Plaintiff's and Class Members' Sensitive Information.

120.    Instead of providing a reasonable level of security that would have prevented the
Data Breach, Defendant calculated to avoid its data security obligations at the expense of Plaintiff
and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and the Class, on
the other hand, suffered as a direct and proximate result of Defendant's failure to provide the
requisite security.

121.    Under the principles of equity and good conscience, Defendant should not be
permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members,
because Defendant failed to implement appropriate data management and security measures that
are mandated by industry standards.

122.    Defendant acquired the monetary benefit and Sensitive Information through
inequitable means in that it failed to disclose the inadequate security practices previously alleged.

123.     If Plaintiff and Class Members knew that Defendant had not secured their Sensitive Information, they would not have agreed to have their Sensitive Information provided to Defendant.

124.     Plaintiff and Class Members have no adequate remedy at law.

125.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) the loss of the opportunity how their Sensitive Information is used; (ii) the compromise, publication, and/or theft of their Sensitive Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Sensitive Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Sensitive Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Sensitive Information in their continued possession and (vi) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Sensitive Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

126.     As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

127.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**COUNT V**
**Violation of Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §§ 501.201, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

128.     Plaintiff incorporates by reference paragraphs 1 through 79 as if fully set forth herein.

129.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. §§ 501.201, *et seq*. The express purpose of FDUPTA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

130.     TGH's sale of goods and provision of medical services for monetary compensation at issue in this cause are "consumer transaction[s]" within the scope of FDUTPA. Fla. Stat. §§ 501.201-501.213. Plaintiff is a "consumer" as defined by FDUTPA. Fla. Stat. § 501.203. TGH is engaged in trade or commerce within the meaning of FDUTPA.

131.     FDUTPA declares as unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

132.     FDUPTA provides that "due consideration be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Trade Commission Act." Fla. Stat. § 501.204(2). TGH's unfair and deceptive practices are likely to mislead—and have misled—the consumer acting reasonably under the circumstances. Fla. Stat. § 500.04; 21 U.S.C. § 343. As set forth above, TGH's Data Breach was a result of its substandard (if not wholly inadequate) data and cybersecurity practices in violation of the state and federal requirements as set forth above.

133.    Pursuant to the FCRA, the FTCA, and Florida law (Fla. Stat. § 456.057 and § 501.171), TGH was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiff's and Class Members' Sensitive Information. TGH was also under an obligation expressly under Florida law, where TGH is headquartered and managed, to adequately protect Plaintiff's and Class Members' Sensitive Information. Among other things, Florida requires TGH to (1) take reasonable measures to protect and secure data in electronic form containing Sensitive Information; (2) take reasonable measures to dispose of or destroy Sensitive Information; and (3) provide notice to consumers, or in this case patients, and consumer reporting agencies subject to the FCRA when a data security incident occurs that compromises Sensitive Information. Fla. Stat. §§ 501.171.

134.    TGH has violated FDUTPA by engaging in the unfair and deceptive practices described above, which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers. At all times material herein, TGH has failed to maintain adequate and reasonable data and cybersecurity protocols for Plaintiff's and Class Members' Sensitive Information in violation of state and federal laws and its own privacy practices and policies. TGH has also failed to take reasonable measures to destroy or dispose of Sensitive Information and timely notify its patients of the Data Breach in violation of Florida law.

135.    Plaintiff has standing to pursue this claim because she has been injured by virtue of suffering a loss of privacy, money and/or property as a result of the wrongful conduct alleged herein. Plaintiff would not have purchased TGH's goods and services (or paid as much) had she known the truth about TGH's substandard and shoddy data and cybersecurity measures. Moreover, TGH will continue to maintain Plaintiff's and Class Members' Sensitive Information for the indefinite future, giving her a strong interest in ensuring such data is protected with state of the art,

industry standards to prevent future data breaches. This is true for current and former patients, including Mr. Wagner. As a direct result of TGH's actions and omissions of material facts, Plaintiff and Class Members did not obtain the value of the goods and services for which they paid; were induced to pay for (or pay more for) medical goods and services that they otherwise would not have; and lost their ability to make informed and reasoned decisions about their medical treatment.

136.    The damages suffered by Plaintiff and Class Members were directly and proximately caused by the deceptive, misleading and unfair practices of TGH, as described above.

137.    Plaintiff and Class Members seek declaratory judgment that TGH's data security practices were not reasonable or adequate and caused the Data Breach under FDUTPA, as well as injunctive relief enjoining the above described wrongful acts and practices of TGH and requiring TGH to employ and maintain industry accepted standards for data management and security, including, but not limited to, proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing. Fla. Stat. § 501.211(1).

138.    Additionally, Plaintiff and Class Members make claims for actual damages, attorneys' fees and costs. Fla. Stat. §§ 501.2105, 501.211(2).

## COUNT VI

### Breach of Fiduciary Duty (on behalf of Plaintiff and the Class)

139.    Plaintiff and members of the Class incorporate paragraphs 1 through 79 as if fully set forth herein.

140.    A relationship existed between Plaintiff and members of the Class and TGH in which Plaintiff and members of the Class put their trust in TGH to protect the private information of Plaintiff and members of the Class and TGH accepted that trust.

141.    TGH breached the fiduciary duty that they owed to Plaintiff and members of the Class by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect the private information of Plaintiff and members of the Class.

142.    But for TGH's breach of the fiduciary duty, the damage to Plaintiff and the members of the Class would not have occurred.

143.    TGH's breach of fiduciary duty contributed substantially to producing the damage to Plaintiff and the members of the Class.

144.    As a direct and proximate result of TGH's breach of fiduciary duty, Plaintiff and members of the Class are entitled to and demand actual, consequential, and nominal damages, and injunctive relief.

## PRAYER FOR RELIEF

Plaintiff and members of the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A.    Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing their counsel to represent the Class;

B.    Awarding declaratory and other equitable relief as is necessary to protect the interests of Plaintiff and the Class;

C.    Awarding injunctive relief as is necessary to protect the interests of Plaintiff and the Class;

D.    Enjoining Defendant from further deceptive practices and making untrue statements about the Data Breach and the stolen Sensitive Information;

E.  Awarding Plaintiff and the Class damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting such other or further relief as may be appropriate under the circumstances.

## JURY DEMAND

Plaintiff hereby demands that this matter be tried before a jury.

Date: August 7, 2023

Respectfully submitted,

By:      /s/ *Joshua R. Jacobson*
Joshua R. Jacobson
Florida Bar No.: 1002264
Jacob L. Phillips
Florida Bar No.: 120130
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: (407) 603-6031
Fax  (888) 974-2175
jjacobson@normandpllc.com
ean@normandpllc.com

*Attorneys for Plaintiff and Proposed Class*

29

# EXHIBIT A

GENERAL HOSPITAL
(/ABOUT-
TGH)
(/)
FIND A
DOCTOR

PROFESSIONALS
(/HEALTHCARE-
PROFESSIONALS)
FIND A
LOCATION

CAREERS
AT-
TAMPA-
GENERAL)
INSTITUTES
& SERVICES
PATIENTS
&
VISITORS

OPPORTUNITIES
(/FOUNDATION/GIVING)

RESEARCH &
INNOVATION

SCHEDULE NOW
(/SCHEDULE)

(HTTPS://MYCHART.TGH



SCHEDULE AN APPOINTMENT

# Cybersecurity Notice

## Notice to Our Patients of Cybersecurity Event

**Tampa General Hospital** considers the health, safety, and privacy of our patients and team members a top priority. Regrettably, this notice concerns a cybersecurity event that may have involved some of that information.

### What Happened?

On May 31, 2023, through our proactive monitoring tools, TGH detected unusual activity on our computer systems. We immediately took steps to contain the activity and began an investigation with the assistance of a third-party forensic firm. Fortunately, TGH's monitoring systems and experienced technology professionals effectively prevented encryption, which would have significantly interrupted the hospital's ability to provide care for patients. However, the investigation determined that an unauthorized third party accessed TGH's network and obtained certain files from its systems between May 12 and May 30, 2023.

TGH reported the event to the FBI and provided information to support its investigation of the criminal group responsible.

### What Information Was Involved?

We reviewed the files involved and determined that some patient information was included. The information varied by individual, but may have included names, addresses, phone numbers, dates of birth, Social Security numbers, health insurance information, medical record numbers, patient account numbers, dates of service and/or limited treatment information used by TGH for its business operations. TGH's electronic medical record system was **not** involved or accessed.

## What is TGH Doing?

TGH considers the health, safety and privacy of patients and team members a top priority. The hospital is continuously updating and hardening systems to help prevent events such as this from occurring and has implemented additional defensive tools and increased monitoring.

## What Can Patients Do?

TGH will be mailing notification letters to individuals whose information may have been involved in this event and is also providing individuals whose Social Security number was involved with complimentary credit monitoring and identity theft protection services. Patients are encouraged to review statements from their health insurer and healthcare providers, and to contact them immediately if they see any services they did not receive.

## For More Information:

Patients with questions can call the dedicated call center at 1-833-627-2718, Monday through Friday, between 9:00 a.m. and 9:00 p.m. Eastern Time.



(/)

## 813-844-7000 (tel:8138447000)

**CONTACT US   (/ABOUT-TGH/CONTACT-US)**

**MAKE A GIFT   (/FOUNDATION/GIVING/MAKE-A-GIFT)**

### ABOUT TGH

About Tampa General Hospital (/about-tgh)

Leadership Team (/about-tgh/tampa-general-hospital-leadership)

The Academic Difference (/about-tgh/academic-health-system)

TGH Foundation (/foundation)

Advances Magazine (https://lsc-pagepro.mydigitalpublication.com/publication/?i=795174)

TGH Annual Report (/about-tgh/tgh-annual-report)

Community Health & Wellness (/about-tgh/community-health-and-wellness)

Employer Solutions (/institutes-and-services/employer-solutions)

Nondiscrimination Policy (/nondiscrimination-policy)

### FOR PATIENTS

Billing & Insurance (/patients-visitors/billing-insurance)

Classes & Events (/patients-visitors/classes-events)

Facial Masking Policy (/facial-masking-policy)

Lab Test Directory (/healthcare-professionals/lab-test-directory)

Medical Records (/patients-visitors/medical-records)

**FOR HEALTHCARE PROFESSIONALS**

Refer a Patient (/healthcare-professionals/refer-a-patient)

TGH EpicLink (/healthcare-professionals/tgh-epiclink)

Defining Medicine (/defining-medicine)

CareMESH PreEnrollment SignUp (/healthcare-professionals/caremesh-preenrollment-signup)

Request an Application for Privileges (/healthcare-professionals/medical-staff-privileges-application-request)

Careers (/careers-at-tampa-general)

Managed Care Credentialing Request (/healthcare-professionals/managed-care-credentialing-request)

**STAY CONNECTED**

News & Media (/news)

Classes & Events (/patients-visitors/classes-events)

---

**FOLLOW US ON SOCIAL MEDIA**

(https://www.you... (https://www.faceb... (https://twitter.com/tgh) (https://linkedin.com/company/tampa-general-hospital/)

 (https://adasitecompliancetools.com/ap.asp?h=TGH)

---

© 2023 Tampa General Hospital

Compliance (/accessibility-compliance-policy)

Nondiscrimination Policy (/nondiscrimination-policy)

Terms of Use (/terms-of-use)